IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

REGINA R. WIMS,

     Plaintiff,

v.                                                      CASE NO. 1:21-cv-100-AW-GRJ

ST. PATRICK INTERPARISH
SCHOOL, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court are two Motions to Dismiss,[1] ECF Nos. 33, 34, the Second Amended Complaint ("Complaint") of *pro se* Plaintiff Regina R. Wims ("Wims").  In the Complaint, Wims alleges that Defendant parochial school and its administrators and teachers discriminated against her and her children on the basis of race.  After careful consideration, the Court concludes that all of Wims' federal claims are due to be dismissed for failure to prosecute, failure to comply with a court order, failure to state a claim upon which relief may be granted, and because they are time-barred.

---

[1] The first motion to dismiss is brought by the Catholic Diocese of St. Augustine, St. Patrick Interparish School, and ten individual St Patrick's school administrators and teachers. The second motion is brought by Pamela Diaz ("Diaz"), who served as Title I Director for Alachua County, Florida during the time period relevant to the Complaint.

Further, the Court should decline to exercise supplemental jurisdiction over Wims' state law claims.

As an initial matter, Wims' claims should be dismissed for failure to prosecute and for failure to comply with two court orders directing Wims to respond to the instant motions to dismiss.  ECF Nos. 40, 42.  In its Show Cause Order, the Court warned Wims that if she failed to respond by the court-imposed deadline, the Court would recommend dismissal of this case without further notice.  ECF No. 42 at 2.  The deadline expired one month ago, and Wims has still not responded.[2]

Wims' federal claims are also due to be dismissed because they are

_____

[2] "[U]nder Federal Rule of Civil Procedure 41(b), a district court may *sua sponte* dismiss a suit for failure to prosecute or failure to comply with an order."  *Brown v. Blackwater River Corr. Facility*, 762 F. App'x 982, 985 (11th Cir. 2019); *see also Foundry v. Indian River Cty. Sheriff's Office*, 845 F.3d 1117, 1126 (11th Cir. 2017) (federal courts possess an inherent authority to dismiss a complaint for failure to comply with a court order); *Sheraton Atlanta Hotel*, 618 F. App'x 987, 989-91 (11th Cir. 2015) (affirming dismissal of *pro se* complaint with prejudice for failure to comply with court orders where district court had given plaintiff detailed instructions on how to amend the complaint and plaintiff failed to amend in compliance with the order). While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, is permitted. *See State Exch. Bank v. Hartline,* 693 F.2d 1350, 1352 (11th Cir.1982).  Nevertheless, dismissal is a sanction of last resort that requires findings of "willful delay or conduct" and that "lesser sanctions will not suffice."  *Jacobs v. Atlanta Police Dep't*, 685 F. App'x 827, 831 (11th Cir. 2017). Dismissal of this case is appropriate because Wims' failed to comply with the court's order directing her to respond to Defendants' motions.  Further, Wims' federal claims are time-barred, so amending the complaint would be futile.  *See, e.g., Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Hall v. United States*, 367 F.3d 1255, 1263 (11th Cir. 2004) (district court may properly deny leave to amend when such amendment would be futile).

time-barred under the governing statutes of limitations as discussed below. And, finally, even if Wims' federal claims were not time-barred, she fails to state a claim upon which relief may be granted even though the Court outlined for her in detail what she must plead to bring the federal claims she asserts in the Complaint.  *See* ECF No. 10 at 3-8.

## I.  STANDARD OF REVIEW

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 (*citing Twombly*, 550 U.S. at 556, 127 S.Ct. at 1955). "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations."  *Id*. at 679, 129 S.Ct. at 1950. Detailed factual allegations are not required, but the complaint must offer more than

"labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1965 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted).

"The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth*., 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997) (*citing SEC v. ESM Grp., Inc*., 835 F.2d 270, 272 (11th Cir. 1988)).

*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (citation omitted). This leniency, however, does not confer on *pro se* litigants "a right to receive special advantages not bestowed on other litigants."  *Procup v. Strickland*, 760 F.2d 1107, 1115 (11th Cir. 1985). The *pro se* litigant must, for example, "abide by local rules governing the

proper form of pleadings." *Id*.  Further, "this leniency does not give a court license to serve as *de facto* counsel for a party… or to rewrite an otherwise deficient pleading in order to sustain an action."  *GRJ Investments, Inc. v. Cty. of Escambia, Fla*., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) (internal citations omitted).   In determining whether a *pro se* litigant has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations," while keeping in mind that "wildly implausible allegations in the complaint should not be taken to be true."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008).

## II.  PLAINTIFF'S ALLEGATIONS

Taking Wims' allegations as true, Defendant parochial school and its staff were "deliberately indifferent" to a "continuous and ongoing hostile school environment, and discrimination against [Wims] and her two children."   ECF No. 12. ¶ 1.   Wims is an African-American woman.  *Id*. ¶ 14.  Her two African-American children attended St. Patrick's Interparish School during the 2016-2017 academic year.  *Id*. ¶ 42.  During that school year, three groups of events transpired at the school that caused Wims and her children injury.  First, in May of 2016, Wims alleges Defendants wrongly charged Wims $310.00 for her failure to complete her volunteer hours. ECF

No. 12 ¶ 114.  According to Wims, "African American and Hispanic [families] were charged extra money by defendant St. Patrick Interparish School when the machine utilized to determine volunteer hours became damaged during the 2016 school year, while other similarly situated white parents were not charged any extra money."  ECF No. 12 ¶ 115.  Wims overpaid the $310.00 charge by check in the amount of $330.00.  *Id*. ¶ 114.  Defendants eventually admitted that they assessed Wims in error and refunded the entire $330.00 to her.  *Id*.

Second, Defendants discriminated against Wims' children by (1) assigning them academic grades lower than what they actually earned and by (2) disciplining them in a manner that non-minority children were not disciplined.  *Id*.  ¶¶ 61-72.  In September of 2016, Wims' son received a math test score lower than the score he achieved; whereas "others were graded according to their [actual] scores."  *Id*. ¶ 116.  In February of 2017, Wims' son was "verbally abused" by a white female student, but Defendants failed to take any action against the abuser.  *Id*.  ¶ 117.  Then in March of 2017, the school punished Wims' son for misconduct that Wims says he did not engage in.  *Id*. ¶ 118 ("Plaintiff disagreed" that her son was the one who provoked the incident).

Third, in May of 2017, Wims' son was "intimidated" "berated and

embarrassed" in front of the "entire class" by a Defendant teacher when the teacher slammed a book down on the son's desk; then, school administrators insinuated that the son was lying about the incident.   ECF No. 12 ¶¶ 88-89, 95.  Also, in May of 2017, Defendants refunded the registration fee Wims had paid for her children to attend St. Patrick's school for the 2017-2018 school year, without explanation.  *Id*. ¶ 97.  But "other similarly situated parents" were able to register their children for the 2017-2018 school year.  *Id.*

Wims' allegations against Diaz are lodged in a lone paragraph of the Complaint. She alleges:

> Mrs. Wims visited the Director of Title I in Alachua County, Pam Diaz.  When Mrs. Wims initially met Pam Diaz, she confirmed that Saint Patrick Interparish School was a recipient of Title I funds from Alachua County and the Florida Department of Education.  After the School's administration became aware of Mrs. Wims' intention to file a complaint, Mrs. Wims states that she attempted to revisit Pam Diaz.  Pam Diaz refused to see or speak with Mrs. Wims a second time.

*Id*. ¶ 101.

Wims also attached several exhibits to her initial complaint, ECF No. 1.  Three of the exhibits reveal that Wims previously complained about many of the events related to this lawsuit to federal and state agencies in

2013 and 2017, to no avail.[3]  *See* ECF No. 12 ¶ 31.

Based on these allegations, Wims asserts the following ten (10) causes of action against all Defendants:  (1) Racial Discrimination, 42 U.S.C. § 1981 (Count I); (2) Fourteenth Amendment violations, 42 U.S.C. § 1983 (Count II); (3) Failure to Supervise, 42 U.S.C. § 1983 (Count III); (4) Retaliation, 42 U.S.C. § 1983 (Count IV); (5) Civil Conspiracy under Florida state law (Count V); (6) Due Process violations, 42 U.S.C. § 1983 (Count VI); (7) Equal Protection violations, 42 U.S.C. § 1983 (Count VII); (8) Conspiracy, 42 U.S.C. § 1985 (Count VIII); (9) Breach of Contract (Count IX); and (10) Negligence (Count X).

For relief, Wims seeks $7 million dollars against each Defendant; a declaration from the Court that the Defendants violated Wims' human rights; an injunction prohibiting Defendants from engaging in the conduct alleged in the Complaint; reasonable attorney's fees and litigation costs; and any other such award the Court deems just and proper.  ECF No. 12 at 40-41.

---

[3] *See* ECF No. 1-1 at 54, United States Department of Education, Office for Civil Rights April 5, 2013 letter to Wims stating that it lacks jurisdiction over Wims' complaints; *Id*. 56, April 12, 2017 Wims' Complaint to Florida's Office of Independent Education and Parental Choice; and *id*. at 63, United States Department of Education, Office for Civil Rights July 12, 2017 letter to Wims stating that it lacks jurisdiction over Wims' complaints.

## III.  DISCUSSION

Before the Court discusses why Wims' claims must be dismissed, the Court reaffirms that as a general proposition discrimination on the basis of race is a serious matter.  Congress has enacted a number of federal laws to ensure that citizens are not discriminated against, particularly on the basis of race.  One of those laws is 42 U.S.C. § 1981 ("Section 1981"), which Wims asserts was violated by Defendants. The United States Supreme Court has held that Section 1981 prohibits "private, commercially operated, nonsectarian schools from denying admission to prospective students because they are [African-American]."  *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976).  The Supreme Court has also found that Section 1981 applies to intentional discriminatory actions related to contracts formed with a private Catholic institution.  *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

These protections against discrimination are not without limit. Congress and the courts have imposed time limitations by which a plaintiff alleging discrimination must sue.  In this lawsuit, Wims' various federal claims are subject to four-year statutes of limitations.

Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a

well-ordered judicial system. Making out the substantive elements of a claim for relief involves a process of pleading, discovery, and trial. The process of discovery and trial which results in the finding of ultimate facts for or against the plaintiff by the judge or jury is obviously more reliable if the witness or testimony in question is relatively fresh. Thus in the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious.

*Board of Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478,

487-88, 100 S.Ct. 1790, 1796-97, 64 L.Ed.2d 440 (1980).

In view of these considerations, the Court addresses below, in turn,

the three categories of federal claims brought by Wims.  First, the Court

analyzes claims of racial discrimination under Section 1981.  Second, the

Court reviews Wims' claims brought under 42 U.S.C. § 1983 ("Section

1983").  Third, the Court examines Wims's civil rights conspiracy claims

under 42 U.S.C. § 1985(3) ("Section 1985").

**A.     Racial Discrimination Claims, 42 U.S.C. § 1981.**

Wims alleges that all Defendants discriminated against her and her

children in violation of Section 1981.  Under Section 1981, "all persons

within the jurisdiction of the United States shall have the same right to

make and enforce contracts… and to the full and equal benefit of all laws

and proceedings for the security of persons and property as is enjoyed by

white citizens…."  42 U.S.C. § 1981.  Any claim brought under Section

1981, therefore, must identify an impaired "contractual relationship" under

which the plaintiff has rights.  This contractual relationship does not need to

presently exist as Section 1981 "protects the would-be contractor along

with those who already have made contracts." *Domino's Pizza, Inc. v.*

*McDonald*, 546 U.S. 470, 476, 126 S.Ct. 1246, 1249-50, 163 L.Ed.2d 1069

(2003).  Moreover, to constitute a violation of Section 1981, the alleged

discrimination must be intentional.  *Gen'l Bldg. Contractors Ass'n v.*

*Pennsylvania,* 458 U.S. 375, 390, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835

(1982).

    A plaintiff asserting a non-employment Section 1981 claim must

establish the following: (1) she is a member of a racial minority;[4] (2) the

defendant intended to racially discriminate against her; and (3) the

discrimination concerned one or more of the activities enumerated

in Section 1981. *Oirya v. Auburn Univ.*, 831 F. App'x 462, 463-64 (11th Cir.

2020) (per curiam) (*citing Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304,

1308 (11th Cir. 2010)).

---

[4] As African-Americans, Wims and her children meet this element of a Section 1981 claim.

1.   <u>Section 1981 Claims Barred by Statute of Limitations</u>.

In their Motions to Dismiss, Defendants argue that Wims' Section 1981 claims must be dismissed because they are barred by the statute of limitations.  A four-year federal statute of limitations is applied to any Section 1981 claim that is cognizable *only* because of a 1991 amendment to Section 1981 which "broadened the definition of the term 'make and enforce contracts.'"  *Grimes v. Board of Regents of Univ. Sys. of Georgia*, 650 F. App'x 647, 651 (11th Cir. 2016).  In all other cases, the Court must apply the "analogous state statute of limitations".  *Id*.   Wims' Section 1981 claims challenge discrimination in the form of a contract for school admission, so they fall "squarely within the pre-amendment version of § 1981."  *Id*.  The claims are thus governed by Florida's statute of limitations for personal injury cases, *see id*., which is also four years.  *See Baker v. Gulf & Western Indus., Inc*., 850 F.2d 1480, (11th Cir. 1988) (*citing* Fla. Stat. § 95.11).

A federal civil rights claim accrues once a plaintiff knows or reasonably should know (1) that she has suffered the injury that forms the basis of the complaint and (2) who has inflicted the injury.  *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citation omitted).

Wims filed this lawsuit on May 28, 2021. ECF No. 1.  So, the events that give rise to her Section 1981 claims must have occurred no earlier than May 28, 2017.  In this lawsuit, virtually all the incidents where Wims alleges unfair treatment occurred well before that date.  *See* ECF No. 12 ¶ 44 (discrimination began May 2016); ¶ 53, ¶¶ 68-71 (unfair grading, September 2016 and March 2017); ¶ 54 (fraudulent charge for unmet volunteer hours, October 2016); ¶ 61 (verbal abuse of Wims' son, February 2017); ¶ 84 (Wim's son unfairly disciplined, April 2017).

Wims obviously knew about these events in sufficient time to vindicate her injuries in federal court.  Yet, she waited more than four years to file suit.  That is too late.  "Statutes of limitations are strictly enforced, 'even where the plaintiff is *pro se*.'" *Mione v. McGrath,* 435 F. Supp. 2d 266, 270 (S.D.N.Y. 2006) (enforcing statute of limitations in *pro se* Section 1981 action) (quoting *Garland–Sash v. City of New York,* Case No. 04 Civ. 0301, 2005 WL 2133592, at *3 (E.D.N.Y. Sept. 1, 2005) (quoting *Hamilton v. Wilson,* 2004 WL 169789, at *4, 2004 U.S. Dist. LEXIS 957, at *11 (S.D.N.Y. Jan. 28, 2004))).  As a result, Wims' Section 1981 claims related to events that pre-date May 28, 2017, are time-barred.

2.     <u>Failure to State a Section 1981 Claim</u>.

Two incidents complained about by Wims occurred in May of 2017.

Wims does not provide the Court with the specific date that each event took

place, just the month.  Because racial discrimination is a serious matter, the

Court will address the Section 1981 claims related to these events.

In the first event, Wims alleges that her son was "intimidated"

"berated and embarrassed" in front of the entire class by a Defendant

teacher when the teacher slammed a book down on the son's desk.  ECF

No. 12 ¶ 88.  Later, school administrators insinuated that Wims' son was

lying about the incident. *Id*. ¶ 95.  Wims does not allege that the teacher or

administrators took action that was intended to discriminate against her son

because he was African-American.  Instead, Wims says that the book

slamming incident arose from her son's failure to ask the teacher for

permission to read a book outside of his reading range, as was required.

ECF No. 12 ¶ 88.

The second May 2017 event involved the Defendants' refunding

Wims' registration fees for the 2017-2018 school year, without explanation.[5]

---

[5] An e-mail attached to Wims' original complaint shows that Wims was refunded the registration fees sometime prior to midnight on April 28, 2017.  *See* Wims' April 28, 2017 e-mail to the school, ECF No. 1-1 at 35 ("Lexie returned our student fees for next year.  Why have they been returned to us?").

ECF No. 12 ¶ 97.  Here, too, Wims does not allege that the Defendants took action that was intended to discriminate, *i.e*., denied her children admission to the school because of their race.  Wims only alleges that the school did not want her children to return, adding a general complaint that "other similarly situated" parents were allowed to register their children for the 2017-2018 school year.  *Id*.

Under Section 1981, Wims and her children are among the class of persons protected from intentional racial discrimination in the context of a contract.  A "contract for educational services is a 'contract' for purposes of § 1981."  *Gratz v. Bollinger*, 539 U.S. 244, 276, n.23, 123 S.Ct. 2411, 2430 n. 23, 156 L.Ed.2d 257 (2003) (*citing Runyon v. McCrary*, 427 U.S 160, 172, 96 S.Ct. 2586, 49 L.Ed.2d 493 (1976)).  But, to successfully state a Section 1981 claim, a plaintiff must plead discriminatory intent.  Wims' allegations do not meet this pleading requirement.

A plaintiff may establish racial discrimination under Section 1981 either directly or circumstantially, *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008), and such claims are analyzed in the same manner as claims brought under Title VII, *Oirya*, 831 F. App'x at 464 (*citing Butler v. Ala. Dept. of Transp*., 536 F.3d 1209, 1215 (11th Cir. 2008)). To state a claim for direct racial discrimination, a plaintiff must allege the overt

invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language. *See Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 892 (11th Cir. 2007) (intentional discrimination established directly where defendant's employee used a racial slur). Wims's Complaint is devoid of such allegations. Wims does not allege that Defendants ever disparaged her race, used racially charged language, or otherwise said anything about race to anyone.

Wims has also not alleged adequately a circumstantial Section 1981 claim. To make out a *prima facie* case for circumstantial discrimination, a plaintiff must point to comparators outside of the plaintiff's protected class who were "similarly situated in all material respects" and were treated more favorably. *See, e.g.*, *Jenkins v. Nell,* 26 F.4th 1243, 1249 (11th Cir. 2022). Looking at the book slamming incident, Wims does not allege that non-African-American students were treated more favorably by the offending teacher under the same or materially similar circumstances. And, as to the refund of registration fees, Wims states only that "other similarly situated parents" were able to register their children for the 2017-2018 school year but that she was not. ECF No. 12 at ¶ 97. Wims provides no details about these other parents. Such conclusory allegations are not specific enough

to plead discriminatory intent. *See Hall v. Cont'l Airlines, Inc.*, 252 F. App'x. 650, 653-54 (5th Cir. 2007) (unpublished).

In sum, Wims' Section 1981 claims are time-barred and alternatively the incidents about which she complains that may have occurred within the statute of limitations fail to state a Section 1981 claim.

### B.    Civil Rights Claims, 42 U.S.C. § 1983.

Wims asserts Section 1983 claims against all Defendants for violations of her due process, equal protection, and First Amendment rights as well as for "failure to supervise."[6]  These claims fail as a matter of law. That is because all Defendants are private actors, except Diaz.  And there are no allegations that Diaz deprived Wims of a federal right.

To state a Section 1983 claim, a plaintiff must allege that (1) the defendants deprived her of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015).

Although Diaz was an Alachua County employee (and not a "private actor") during the relevant time period, the only "action" Wims alleges Diaz

---

[6] As Defendants point out, Wims' Section 1983 claims are also barred by the statute of limitations for the reasons discussed above. *See Allen v. King*, 279 F. App'x 847, 848 (11th Cir. 2008) (per curiam) (four-year statute of limitations applies to Section 1983 claims arising in Florida).

took was refusing to meet with Wims. ECF No. 12 ¶ 101. Wims does not have a constitutional right to meet with Diaz. *Cf. Boster v. Philpot*, 645 F. Supp. 798 (D. Kan. 1986) (state's Open Meeting Act conferred no constitutional rights; therefore, no federal question was involved). Accordingly, Diaz's failure to meet with Wims did not deprive Wims of a right secured under federal law.

With respect to Wims' Section 1983 claims against the remaining private actor defendants, [7] a private party can be viewed as a state actor for Section 1983 purposes "[o]nly in rare circumstances." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: (1) the "public function" test, (2) the "state compulsion" test, and (3) the "nexus/joint action" test. *Id.* (*citing NBC v. Communications Workers of America, AFL–CIO*, 860 F.2d 1022, 1026 (11th Cir.1988)).

Pertinent here, the Supreme Court has found that a private school does not meet any of the tests that would subject it to Section 1983 liability. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73

---

[7] The St. Patrick's School administrators and teachers named in this lawsuit are Frank Mackritis, Krista Whitehill, Glenda Nolan, Staci Williams, Victoria Guarjardo, Christina Hasko, Deacon Scott Conway, Laura Jarosiewicz, Betsy Boyle and Lexi Jablonski.

L.Ed.2d 418 (1982).  So, St. Patrick's school cannot be held liable under Section 1983.  Neither can any of the school's teachers or administrators. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1277 (11th Cir. 2003) (citations omitted).

In sum, Wims has not, and cannot allege a Section 1983 claim against the Defendant school or the Defendants who worked at the school.

**C.    Civil Conspiracy Claims, 42 U.S.C. § 1985(3).**

The last federal claim Wims attempts to assert is civil rights conspiracy claim under Section 1985. These claims are also governed by a four-year statute of limitations, so they are largely time-barred. *Chappell,* 340 F.3d at 1283 ("Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985.") (citation omitted).  And similar to the claims discussed above, even if these claims could go forward on the merits, Wims fails to state a Section 1985 claim.

Section 1985 creates a cause of action for damages against conspiracies which deprive persons of the equal protection of law or other federal rights, privileges or immunities. 42 U.S.C. § 1985(3).

> To state a claim under §1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury either to his person or property, or was deprived of a right or privilege of a citizen of the United States.

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). "When the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment." *Id*. (citations omitted). The purpose of Section 1985 is to "stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general tort law." *Cook v. Randolph Cty*., Ga., 573 F.3d 1143, 1156 (11th Cir. 2009) (citation omitted). Thus, a Section 1985 claim "requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right." *Id*.

It does not suffice for application of Section 1985(3) that a protected right is incidentally affected. "The right must be '*aimed at*'…; its impairment must be a conscious objective of the enterprise." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 275, 113 S.Ct. 753, 762, 122 L.Ed.2d 34 (1993) (internal citation omitted) (emphasis in original). "[T]he 'intent to deprive of a right' requirement [of Section 1985] demands that the

defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Id.* at 276, 113 S.Ct. at 763.

In the present case, Wims has not alleged a conspiracy for the purpose of depriving her or her children of a constitutional right. This is so because Wims and her children have no constitutional right to a private-school education, or to a school free from student bullying, or to a more favorable grade than what the teacher assigned, or to a tuition discount for performing volunteer service hours, or to a teacher with a better temperament. And notably, each of these "wrongs," even when combined, do not evince a "conspiracy" on the part of Defendants.

Wims' general and conclusory statements that "Defendants conspired with one another" to subject Wims and her children to "discrimination based on their race and color", all of which centers on the "wrongs" described above, do not establish either "proof of invidious discriminatory intent" or a "violation of a serious constitutional right."

For these reasons, Wims' has not, and cannot, allege a conspiracy claim under Section 1985(3) based upon the incidents and wrongs about which she complains.

## IV.   CONCLUSION

In view of the forgoing, the undersigned respectfully **RECOMMENDS:**

1.  Defendants' Motions to Dismiss, ECF Nos. 33 & 34 should be **GRANTED.** This case should be **DISMISSED with prejudice** for failure to prosecute and for failure to comply with a court order and because all of Wims' federal claims are either time-barred or not viable.

2.  In the absence of a pending viable federal claim the Court should decline to exercise supplemental jurisdiction over Wims' state law claims under § 1367(d).

**IN CHAMBERS** in Gainesville, Florida this 13th day of April 2022.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.